53 CCPA

## Application of Otto VON SCHICKH.
## Patent Appeal No. 7530.

United States Court of Customs and Patent Appeals.

July 7, 1966.

Herbert B. Keil, Matthew C. Thompson, Chicago, Ill., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of process claims 8–13 and 16 in application serial No. 640,334, filed February 15, 1957, for "Production of Cycloaliphatic Nitrates." No claim is allowed.

The invention is an improved process for the direct nitration of cycloaliphatic alcohols and becomes clear from a consideration of the claims:

8. A process for the production of cycloaliphatic nitrates from cycloaliphatic alcohols which comprises dissolving a cycloaliphatic alcohol in an inert solvent, mixing the resultant solution with a nitrating acid at a temperature in the range of from about −40°C. to about 20°C., agitating the mixture, and thereafter removing the solvent to recover said cycloaliphatic nitrate.

Claims 9–13 are dependent on claim 8 and add limitations to specific alcohols and resulting nitrates, for example cyclohexanol resulting in cyclohexanol nitrate, as in claim 10. Claim 16 is the same as claim 8 except that the temperature range is from −10°C. to −5°C. and the nitrating acid is defined as "consisting of one part nitric acid and at least about one part sulfuric acid." According to the specification, the "nitrating acid" is a mixture of concentrated nitric acid and concentrated sulfuric acid, whereby an amount of "about 1 part of nitric acid to 1, 2, 3, or more parts of sulfuric acid may be employed."

The references relied on are:
Kokatnur   2,435,314   Feb. 3, 1948
Kornblum, et al., Journal American Chemical Society, 74, page 3077 (1952).

Another reference, relied on by the examiner, was dropped by the board as "less pertinent."

Kornblum et al., discussed in appellant's specification, appears to represent one of the first reports of *directly* nitrating cycloaliphatic alcohols. This reference discloses the production of cyclopentyl nitrate by introducing cyclopentanol into a stirred solution of sulfuric and nitric acids, at approximately −20°C., over a period of thirty minutes. The mixture was stirred for a further fifteen minutes and petroleum ether was added. After stirring for another five minutes, the mixture was poured onto crushed ice. The organic layer was separated, washed with phosphoric acid and dried over anhydrous sodium sulfate. After removal of the petroleum ether the residue was rectified and a *69% yield* of cyclopentyl nitrate was obtained. No mention is made by Kornblum et al. of dissolving the cyclopentyl alcohol in an inert solvent prior to mixing it with the nitrating acids, in which respect the appealed claims distinguish therefrom.

Kokatnur discloses a method of nitrating organic compounds, especially aromatic compounds, by carrying on the nitration reaction in combination with a diluent which is substantially inert to the

reacting materials, is substantially immiscible with water, has a suitable boiling point and is *preferably a solvent for the compound to be nitrated* as well as the product of nitration. Except for glycerine, none of the compounds to be nitrated are alcohols. Certain of the diluents disclosed correspond to the inert solvents employed by appellant.

The board said:

After review of the references and arguments submitted, we are constrained to affirm the rejection of the appealed claims as unpatentable over Kornblum et al. in view of Kokatnur. Kokatnur's diluent is described as inert and is a solvent for the compound being nitrated. While this diluent is vaporized during use in Kokatnur's process, the vapors are condensed and refluxed to the reaction zone so that some diluent is always present in the reaction zone. In view of this suggestion in Kokatnur of the use of a a diluent which functions as an inert solvent in a nitrating reaction and in further view of the fact noted on page 5 of the Examiner's Answer, that it is fundamental in chemistry that a solvent will moderate a reaction, we are of the view that it would not be unobvious to one skilled in the art to use an inert solvent in Kornblum et al.'s process.

We have considered appellant's affidavit but are not persuaded thereby to reach a conclusion different from that above indicated. While the affidavit shows improved yields, the several experiments are not strictly comparable. Thus, in Experiment 3 the process was conducted at a higher temperature than in Experiment 1 and in Experiment 3 of the sulfuric acid was used in greater volume than the nitric acid, whereas in Experiment 1 the two acids were used in equal volumes.

The affidavit referred to sets forth three experiments: the first is essentially a repetition of Kornblum et al.'s disclosure; the second is the same as the first except that only one-half as much nitric acid and one-half as much sulfuric acid are used, resulting in about one-half the yield; and the third illustrates the present invention wherein about one-third as much sulfuric acid was used as was used by Kornblum et al., a *95% yield* being obtained, i. e., about 35% improvement in yield compared with Kornblum et al. even though much less nitrating acid was employed.

Since we think the art of record fails to suggest both what appellant *did* in terms of carrying out the process per se, and what appellant *found* in terms of an improvement in yield, and since we are unable to agree with the board's criticism of appellant's affidavit which otherwise proves statements in the specification alleging these improvements over the prior art, we think the decision of the board should be reversed.

As we view the prior art relied on, Kornblum et al. show that cycloaliphatic alcohols can be *directly* nitrated without great quantities of the alcohol being oxidized to the corresponding ketone or acid—a problem which apparently then went unsolved. However, Kornblum et al.'s procedure was not free from difficulty. Low temperatures were required—the reaction was said to be uncontrollable at 0°C.—and great lengths of time as well as great quantities of nitrating acid were needed.

Kokatnur was interested in the nitration of organic compounds, but not cycloaliphatic alcohols, indeed, not alcohols at all except for glycerine. His primary interest was in nitrating aromatic compounds. But regardless of the type of compounds being nitrated, what Kokatnur did was to reduce local superheating, thereby controlling or moderating the reaction rate, *by eliminating the need for sulfuric acid* commonly used in nitrating reactions to absorb the water produced from the reaction. This absorption aided in driving the reaction to completion but, in so doing, caused localized heating which in turn caused undesirable effects. Thus, Kokatnur *replaced* the sulfuric acid with a diluent or solvent to form an azeotropic mixture with the

water of reaction thereby removing that water at a relatively low temperature. Apparently Kokatnur's high yields can be attributed to this efficient removal of water.

The examiner and board ignore the bulk of Kokatnur's disclosure and emphasize instead a few selected passages from which they generalize that Kokatnur was concerned with moderating a nitration reaction and that he employs a solvent which would dissolve the material being nitrated—all of which is perfectly true—and then conclude that it would be obvious to use Kokatnur's solvents in the reaction of Kornblum et al. With this we disagree.

What we think the combination of references teaches is to *eliminate* the use of sulfuric acid in Kornblum et al. and use a solvent *instead*. It might even be said that the combination suggests the employment of an azeotropic mixture in the Kornblum et al. process. Any way one looks at it, the result is certainly *not* what appellant has done, for the claimed process uses sulfuric acid *in addition to* the organic solvent. We find no suggestion of this in the references.

■■ Even assuming the process to be prima facie obvious from a consideration merely of the reactants, media, and steps employed, we think the invention as a whole must be deemed unobvious under 35 U.S.C. § 103 by reason of the increase in yield obtained while using considerably less nitrating acid. We find no suggestion of this characteristic of the claimed process. It appears to be quite unexpected and, being part of the invention as a whole, it should be treated under the law as is an unexpected prop-

erty in compositions. See In re Papesch, 315 F.2d 381, 50 CCPA 1084.

On the question of whether appellant's affidavit proves the improved yield as alleged, we agree with the board that the experiments are not *strictly* comparable, but we are unable to agree that the deviations referred to are fatal to appellant's case. For example, in view of the large molar excesses of acid employed in all experiments, we fail to see the significance of the board's point that in Experiment 1, which relates to the Kornblum et al. process, the amount of nitric and sulfuric acids is the same while in Experiment 3, illustrating appellant's invention, it is not. We believe the amount by which they differ in Experiment 3 to be insignificant. At least the record fails to convince us that such a difference *is* significant. Furthermore, it is noted that the amount of both sulfuric and nitric acid is much less in appellant's invention than in the prior art process. As to the ten degree differential in temperatures, this would seem to hinder appellant's process since the higher temperature would, we think, drive the reaction toward the unwanted competitive reaction of oxidizing the alcohol to the ketone, as appellant points out.

In summary, viewing both what appellant did and what he obtained in light of the prior art relied on, we conclude that the invention as a whole is unobvious within the meaning of 35 U.S.C. § 103.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., and SMITH, J., concur in the result.